# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THIRTY EIGHT STREET, INC., et al., | ) | CASE NO. 1:08CV716 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| CHATUR CORPORATION, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is plaintiffs' motion for attorney fees (Doc. No. 121), defendants' opposition, including a request to dismiss the case (Doc. No. 125), and plaintiffs' reply (Doc. No. 126). The parties have stipulated that this matter can be resolved on briefs, without a hearing. (*See* Doc. No. 123.) For the reasons set forth below, the motion is **GRANTED.**

## I. BACKGROUND

Plaintiff Thirty Eight Street, Inc. ("Thirty Eight") is the owner of the marks BEST VALUE INN, BEST VALUE, and AMERICAS BEST VALUE INN BY VANTAGE®. Thirty Eight licenses the use of these marks to plaintiff Vantage Hospitality Group, Inc. ("Vantage"). In April 2007, Vantage entered into a Brand Membership Agreement ("the Brand Agreement") with defendant Chatur Corporation, whose president is defendant Champak N. Patel, under which plaintiffs' marks were licensed to defendants in connection with offering hospitality services at a property

located in Youngstown, Ohio. The Brand Agreement required defendants to improve and maintain the property at specified levels and to pay certain monthly membership fees.

Defendants failed to maintain the property at the required level and were warned by plaintiffs in August 2007 that they were in violation of the Brand Agreement.[1] They were given an opportunity to cure the defects but failed to do so. Plaintiffs terminated the Brand Agreement, under its terms, effective August 31, 2007. Notwithstanding the termination, defendants continued to use plaintiffs' marks in providing hospitality services. Plaintiffs directed defendants in writing to cease and desist, to no avail.

On March 24, 2008, plaintiffs filed this lawsuit asserting federal trademark claims under the Lanham Act, codified at 15 U.S.C. § 1051, *et seq.* (trademark infringement, false designation of origin, and false advertising), as well as several state law claims (breach of contract, unfair trade practices, intentional interference with prospective business relations) and common law claims (trademark infringement and unfair competition). (Doc. No. 1.) Jurisdiction was properly based on federal question. 28 U.S.C. § 1331.

Despite being served with process, defendants made no appearance and did not timely move or otherwise plead. Therefore, default judgment was entered on all claims by Order dated May 15, 2008, as clarified by Amended Order dated June 4, 2008. (Doc. Nos. 9, 14.)

Upon plaintiffs' motion and because the defendants had failed to comply with any of the provisions of the detailed orders against them , on July 10, 2008, the Court appointed a receiver. (*See* Doc. No. 18.)[2] Shortly thereafter, counsel made an appearance for the defendants

---

[1] Defendants also operated a "Go Go Girls Cabaret Strip Club" on the same property as their motel, which plaintiffs viewed as extremely damaging to their business reputation as owner of the trademarks which defendants were licensed to used.

[2] On August 10, 2009, the Court granted defendants' motion to terminate the appointment of the receiver. (Doc. No. 97.)

and filed a motion for protective order, a motion to set aside the default judgment, and a motion for leave to file an answer. (Doc. Nos. 20, 21, 22.) The Court eventually denied all three motions on August 12, 2008, and, in the hopes of an early resolution to a matter that was already threatening to get out of hand, the Court ordered a settlement conference. (Doc. No. 31.)[3]

Defendants then filed a motion to dismiss for insufficiency of service of process or, in the alternative, to set aside the *entry* of default (making no mention of setting aside the default *judgment*). (Doc. No. 33.) They also sought to stay all action by the receiver. (Doc. No. 38.) Both of these motions were denied on October 2, 2008, after full briefing. (Doc. No. 49.) Defendants sought reconsideration of this order or, in the alternative, leave to take an interlocutory appeal. These requests were also denied on October 22, 2008. (Doc. No. 53.)

On November 4, 2008, defendants filed with the Sixth Circuit Court of Appeals a petition for writ of mandamus. By Order dated March 19, 2009, the petition was denied. (Doc. No. 62.)

On March 26, 2009, plaintiffs moved for entry of judgment and damages on the breach of contract claim (Doc. No. 66) and, subsequently, withdrew their jury demand (Doc. No. 77), agreeing to a bench trial on damages.[4] After attempting unsuccessfully to engage in discovery relating to damages, plaintiffs moved for an order allowing them to waive all but their contract damages. The Court granted that waiver, which obviated any need for a bench trial.

---

[3] Magistrate Judge George Limbert conducted a 2-hour unsuccessful settlement conference on September 18, 2008. This Court conducted another unsuccessful settlement conference, lasting 6½ hours, on January 15, 2009. The Court encouraged mediation because it was of the view that the case should be settled and that the defendants were very likely making a bad situation worse by their protracting the litigation.

[4] The withdrawal of the jury demand was acknowledged by the Court during a telephone conference with counsel on July 14, 2009.

(Doc. No. 122.) In that same order, the Court indicated that it would not enter a Rule 54 final judgment until the issue of attorney fees was resolved. That matter is now ripe for determination.

## II. DISCUSSION

Paragraph 19 of the Brand Agreement between plaintiffs and defendant Chatur Corporation states, in relevant part:

> DISPUTES, ATTORNEY'S FEES: In the event either party is required to engage an attorney to enforce its rights hereunder or in any ancillary action, the prevailing party shall be entitled to recover reasonable attorney's fees for pre-trial, trial, mediation, and on appeal. [. . .]

(Doc. No. 1-3.) Relying on this paragraph as well as this Court's grant of a default judgment as to liability on all of the claims in the complaint (*see* Doc. Nos. 9, 14), on December 29, 2009, plaintiffs moved for an award of attorney fees in the total amount of $80,196.82.[5] This amount encompasses fees for professional services of three law firms: $58,774.55 for Fay Sharpe LLP, plaintiffs' litigation counsel; $13,003.85 for Javitch, Block & Rathbone LLP, plaintiffs' collections counsel; and $8,418.42 for Ater Wynne LLP, plaintiffs' outside legal counsel in general matters. Plaintiffs have supplied itemized statements in support of these amounts.

Defendants have filed their opposition to the fees, making several arguments with virtually no legal support and, as they have several times before, seeking dismissal of this action altogether. The Court will address each argument in turn.

First, defendants argue that because plaintiffs waived all damages with respect to all but the breach of contract claim, they are not allowed to recover fees in connection with any other claim and should have itemized their fees on a claim-by-claim basis. This argument has no

---

[5] Default judgment on the breach of contract claim was entered only against Chatur Corporation, a party to the contract. Absent some showing (which is entirely lacking) that it would be appropriate to pierce the corporate veil so as to make defendant Patel, as president of Chatur Corporation, personally liable for these fees, the Court will not award fees against Patel.

4

merit. The "waived-damages claims" have been part of the lawsuit from the beginning and plaintiffs decided to waive their damages only to expedite completion of the case after defendants, in characteristic fashion, failed to participate in the damages discovery which the Court had permitted. However, even if all of the waived-damages claims had never been part of this lawsuit from the beginning, the legal fees would undoubtedly have been the same. Defendants have fought this action on procedural grounds, challenging the very fact of the default judgment but never challenging any of the particular legal claims.[6] The Court's review of the itemized statements submitted in support of the motion reveals no entry related particularly to work on any one claim in the complaint, nor have defendants pointed to any such specific entry in support of their argument. This argument is rejected.

Second, defendants assert that plaintiffs should not be permitted to recover anything for the services of Javitch, Block & Rathbone, identified by plaintiffs as "collections counsel," because their collections services do not fall under § 19 of the Brand Agreement, nor for the services of Ater Wynne, which never made an appearance in the case, and which also performed services relating to collections and to the waived-damages trademark claims. Plaintiffs rightfully argue that the itemized statements of both firms reveal that they were integral to the proceedings in several ways. Javitch, Block & Rathbone participated in settlement negotiations, depositions, and discussions on strategy; it also assisted in responding to defendants' motions and reviewing and preparing various documents. Ater Wynne conducted much of the pre-trial investigation and attempted to resolve the case at an early stage.[7] This fact,

---

[6] Of course, because they defaulted, defendants had no course of action except on procedural grounds. As defaulting parties, they could not argue any claim on the merits once they squandered their chance to defend by way of a timely-filed answer or motion.

[7] On motions for attorneys' fees, the Court is typically alert to needless duplication of efforts by multiple law firms. In this case, the Court first wondered whether the services of Ater Wynne, which never made an appearance, were

and Ater Wynne's status as "co-counsel," was previously acknowledged in a motion filed by the defendants. (*See* Doc. No. 33.) This argument is rejected.

Third, defendants assert that it is unreasonable to engage the services of three law firms for a mere breach of contract case. This, however, ignores the reality that this was never *only* a breach of contract case. Defendants themselves escalated this from a breach of contract to trademark infringement when, after the Brand Agreement was terminated on August 31, 2007 because of the breach, defendants continued to use the trademarks, despite plaintiffs' demand that they cease and desist. Therefore, from its inception, this case involved several claims and, once the defendants had defaulted and started to file numerous motions trying to set aside the default, the case became quite procedurally complicated. In fact, it was defendants' own actions that caused this case to go far beyond a *mere* breach of contract action.[8] This argument is rejected.

Fourth, defendants challenge the fees for Fay Sharpe to the extent that firm also engaged in "collection" matters and in the interlocutory appeal. As with the other firms, any fees related to "collection issues" resulted from defendants' own default and are clearly "ancillary" within the meaning of ¶ 19 of the Brand Agreement. In addition, ¶ 19 quite explicitly allows for fees relating to an appeal. In this case, defendants attempted unsuccessfully to take an interlocutory appeal and ended up filing an equally unsuccessful petition for writ of mandamus.

---

really necessary. However, a close review of the itemized statements of the three law firms reveals that there was no duplication of services. The dates for which Ater Wynne is claiming fees are not found in the statements of the other two firms, except for one very minor and inconsequential exception in July 2008. (*See*, Doc. No. 121-3 at 8, Claim of .80 hours.)

[8] The Court itself has spent a significant amount of time dealing with defendants' motions and writing, over and over again, memorandum opinions explaining why defendants have made no legitimate arguments in the case.

All of these matters were out of plaintiffs' control and had to be "defended" by the them. This argument of defendants is rejected.

Fifth, defendants argue that this case should be dismissed because damages have been waived for all of the federal question claims, thus defeating jurisdiction.[9] They point to their argument in Doc. No. 33, an untimely-filed motion to dismiss (filed after default judgment was already entered as to liability), that plaintiffs lack capacity to sue in federal court on *diversity* grounds because they have not shown they are licensed to do business in Ohio and because the amount in controversy, in defendants' view, does not meet the requisite $75,000. In denying the motion, this Court ruled, *inter alia*, that it need not address this issue because it had federal question jurisdiction. Now defendants assert that, since plaintiffs have waived their damages on their federal claims, jurisdiction is lost for purposes of awarding fees on the state law breach of contract claim. This argument is nonsense. At the outset of this case, the Court had federal question jurisdiction and, even if plaintiffs had not prevailed on the federal claims, that would not destroy jurisdiction. Here, plaintiffs did prevail, by way of default, on the federal claims and they have chosen to waive damages on those particular claims only because defendants have refused to cooperate in the necessary damages discovery. Defendants argue that, by waiving damages except for breach of contract, plaintiffs have "dismissed" all their other claims, thus "remov[ing] themselves from this court's jurisdiction." (Doc. No. 125 at 5.) There is no merit to this argument.[10]

---

[9] Defendants also continue to argue that service of process was insufficient and, therefore, it would be improper to award fees in such a situation. This issue has been litigated over and over in this case and each time, the Court has ruled that the issue was waived by the defendants' failure to timely raise it although, had it been timely raised, the Court might have agreed that service on the two defendants was insufficient.

[10] Defendants point to the Third Circuit case of *Chabal v. Reagan*, 822 F.2d 349, 353 (3d. Cir. 1987) where plaintiffs were allowed to waive all damages in excess of $10,000 in order to be permitted to choose to proceed to judgment in the Court of Claims rather than the district court. This case is clearly not applicable. It involved a specific statute, the

Sixth, defendants argue that if all the federal question claims are dismissed (by virtue of waiving damages), then jurisdiction can only be based on diversity of citizenship, which plaintiffs have not and, in defendants' view, cannot establish. This is an incorrect view of the law. Even if waiving damages on the federal claims were to amount to a dismissal of those claims, which the Court rejects, that would not destroy jurisdiction. Once jurisdiction is proper in this Court, as it was on the day the complaint was filed, that jurisdiction is not destroyed by subsequent proceedings. *See, e.g., Zuurbier v. MedStar Health, Inc.*, 306 F.Supp.2d 1, 5 (D.D.C. 2004) ("[o]nce a case is properly removed, a plaintiff may not amend the complaint solely to defeat federal jurisdiction") (citing cases).

Having rejected all of defendants' arguments regarding the propriety of awarding fees, the Court concludes that ¶ 19 of the Brand Agreement entitles plaintiffs to recover their "reasonable" fees. Determining a reasonable fee begins with multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This product has come to be known as the "lodestar." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 642 (6th Cir. 2009). A court must afford a "strong presumption" that the lodestar "represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995). Typically a court should look to the "prevailing market rate [. . .]

---

Tucker Act, which gives both district courts and the U.S. Claims Court original jurisdiction over monetary claims against the United States not exceeding $10,000, but gives exclusive original jurisdiction to the U.S. Claims Court for claims exceeding $10,000. In *Chabal*, the court of appeals remanded the case to the district court so that Chabal could be given the opportunity to elect whether or not he was willing to waive recovery in excess of $10,000 so as to be able to keep his case in the district court.

in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command[.]" *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

Plaintiffs' counsel have submitted detailed billing statements. On these statements, they indicate only the initials of the attorneys performing the various services as well as their individual rates. Using the docket, the Court can ascertain the identity of most of the attorneys listed on the bills.

Fay Sharpe LLP

"RMK" (Richard M. Klein) @  $320/hr
"GH" (?) @ $150/hr
"DMJ" (?) @ $135/hr

Javitch, Block & Rathbone, LLP

"VMJ" (Victor M. Javitch) @ $195/hr
"RGK" (Robert G. Knirsch) @ $125/hr

Ater Wynne, LLP

"DPL" (Daniel P. Larsen) @ $325/hr

None of these attorneys has supplied an affidavit attesting to the fact that their hourly rates are consistent with market rates in this community. The defendants, however, have not challenged the hourly rates charged by any of the plaintiffs' attorneys, nor have they attacked the nature of the work as itemized in the invoices attached to the motion for attorney fees. This Court, therefore, presumes that defendants have no opposition with respect to these matters. Further, the Court independently concludes that none of the rates charged are out of bounds for this market, even those that are in the $300 range.

Accordingly, since the Court has rejected all of the arguments which the defendants *did* make, and since defendants have not challenged the documentary support for the motion for attorney fees, the Court expressly finds that the rates charged are reasonable for each attorney and that the services performed were necessary for the litigation. The Court will, therefore, award attorney fees under ¶ 19 of the Brand Agreement in the amounts requested by the plaintiffs.

## III. CONCLUSION

For the reasons set forth above, reasonable attorney fees are granted in favor of the plaintiffs and against defendant Chatur Corporation on the breach of contract claim in the following amounts, totaling $80,196.82:

Fay Sharpe LLP - $58,774.55

Javitch, Block & Rathbone LLP - $13,003.85

Ater Wynne LLP - $8,418.42

Having made this ruling, the Court is now prepared to enter a Rule 54 final judgment. Plaintiffs are directed to forthwith submit for the Court's consideration and signature a proposed Judgment Entry incorporating both the judgment of liability as to all claims and the breach of contract damages, including the attorney fees awarded by this order.

**IT IS SO ORDERED**.

Dated: July 27, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**